WO          IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


REGINA JOHNSON,                    )
                                   )
                    Plaintiff,     )
                                   )
        vs.                        )
                                   )
ANDREW M. SAUL, Commissioner of    )
Social Security,                   )
                                   )          No. 3:19-cv-0170-HRH
                    Defendant.     )
_____)


<u>O R D E R</u>

This is an action for judicial review of the denial of disability benefits under Title II

of the Social Security Act, 42 U.S.C. §§ 401-434.  Plaintiff Regina Johnson moves for

judgment on the pleadings.[1]  This motion is opposed by defendant, Andrew M. Saul.[2]  Oral

argument was not requested and is not deemed necessary.

<u>Procedural Background</u>

On January 3, 2013, plaintiff filed an application for disability benefits under Title II

of the Social Security Act, alleging that she became disabled on August 1, 2009.  Plaintiff

alleged that she was disabled due to fibromyalgia, arthritis, hypertension, chronic fatigue,

_____

[1]Docket No. 19.

[2]Docket No. 22.

-1-

depression, and Type II diabetes. Plaintiff's application was denied, and plaintiff requested a hearing. After an administrative hearing on June 13, 2014, an administrative law judge (ALJ) denied plaintiff's application. Plaintiff sought review of the ALJ's September 3, 2014, unfavorable decision. On December 8, 2015, the Appeals Council denied plaintiff's request for review. Plaintiff sought judicial review and on February 8, 2017, the court remanded the matter for further proceedings. Upon remand, an administrative hearing was held on March 8, 2018. After this hearing, the ALJ again denied plaintiff's application. Plaintiff again sought review of the ALJ's unfavorable decision. On April 15, 2019, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's May 31, 2018 decision the final decision of the Commissioner. On June 17, 2019, plaintiff commenced this action in which she asks the court to review the Commissioner's final decision.

## General Background

Plaintiff was born on January 24, 1956. Plaintiff was 53 years old on her alleged onset date. Plaintiff has a high school education and some college but no college degree. Plaintiff's past relevant work was as a Postal Service supervisor and a Postal Service clerk.

## The ALJ's Decision

The ALJ first found that plaintiff "last met the insured status requirements of the Social Security Act on December 31, 2014."[3]

---

[3]Admin. Rec. at 1440.

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of August 1, 2009 through her date last insured of December 31, 2014. . . ."[5]

---

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit . . . her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform . . . her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 1440.

At step two, the ALJ found that "[t]hrough the date last insured, the claimant had the following severe impairments: diabetes mellitus II, open angle glaucoma, SAO,[6] degenerative joint disease of the left knee and left shoulder, degenerative disc disease of the cervical spine, obesity, and fibromyalgia. . . ."[7] The ALJ found plaintiff's mood disorder and PTSD to be non-severe impairments.[8] The ALJ considered the "paragraph B" criteria and found that plaintiff had no limitations as to understanding, remembering, or applying information; mild limitation as to interacting with others; no limitations as to concentrating, persisting or maintaining pace; and no limitations as to adapting or managing oneself.[9] The ALJ relied on Dr. Valette's testimony as to the severity of plaintiff's mental impairments.[10] The ALJ rejected the opinions of Dr. Curtiss and Social Worker Kneeland[11] as to the severity of plaintiff's mental impairments because these opinions were not consistent with the medical record.[12]

---

[6]The ALJ apparently meant to use the acronym for obstructive sleep apnea, OSA, rather than SAO.

[7]Admin. Rec. at 1440.

[8]Admin. Rec. at 1440.

[9]Admin. Rec. at 1441.

[10]Admin. Rec. at 1440-1441. Dr. Valette's testimony is discussed below in some detail.

[11]Dr. Curtiss' opinions are discussed below in detail. Kneeland's opinions were essentially the same as those of Dr. Curtiss.

[12]Admin. Rec. at 1442-1443.

At step three, the ALJ found that "[t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[13]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that

> through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she could not climb ladders, ropes and scaffolds. On an occasional basis, the claimant is able to climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. In addition, the claimant cannot perform overhead reaching with non-dominant left upper extremity. The claimant's residual functional capacity includes the need to avoid concentrated exposure to non-weather related extreme cold and extreme heat. In addition, she needs to avoid concentrated exposure to fumes, odors, dust, and gases. Furthermore, the claimant needs to avoid all exposure to moving and hazardous machinery and unprotected heights. In addition, the claimant is limited to work that requires no more than frequent, not constant, depth perception.[14]

The ALJ found plaintiff's pain and symptom statements less than credible because there was evidence of secondary gain, she was not always compliant with her recommended treatment, and her statements were contrary to the medical evidence.[15]

---

[13]Admin. Rec. at 1443.

[14]Admin. Rec. at 1444.

[15]Admin. Rec. at 1447.

The ALJ gave great weight[16] to Dr. Kidder's opinion.[17]  The ALJ gave weight[18] to Dr.

Morgan's opinion.[19]  The ALJ gave little weight[20] to Dr. Winn's opinion.[21]  The ALJ gave

little weight[22] to Dr. Levy's paragraph B opinion[23] and partial weight to his functional

---

[16]Admin. Rec. at 1447.

[17]Dr. Kidder testified as a medical expert at the second administrative hearing.  Dr. Kidder opined that plaintiff had the residual functional capacity to occasionally lift 10 pounds; frequently lift less than 10 pounds; stand/walk for 6 hours; sit for 6 hours; had no limitations as to pushing/pulling; could occasionally climb ramps/stairs; could never climb ladders/ropes/scaffolds; could occasionally balance, stoop, kneel, crouch, and crawl; could not reach overhead on the left side; vision should not be a critical part of any job; should avoid concentrated exposure to extreme cold and heat; should avoid concentrated exposure to fumes, odors, dust, and gases; and should avoid all exposure to hazards such as machinery and heights.  Admin. Rec. at 1478-1479.

[18]Admin. Rec. at 1450.

[19]On January 7, 2014, Dr. Morgan, who treated plaintiff's glaucoma, opined that plaintiff did not have significant limitations as to reading normal-sized print, working with large objects, and avoiding normal work hazards; had significant limitations as to walking on uneven terrain, processing visual information, and working with small objects; would need to take a 10-minute break every 2-3 hours; and would miss less than one day per month due to her glaucoma.  Admin. Rec. at 1298-1299.

[20]Admin. Rec. at 1448.

[21]On May 16, 2013, Wandall Winn, M.D., a nonexamining source, opined that plaintiff had mild restrictions of activities of daily living, mild difficulties maintaining social functioning, moderate difficulties maintaining concentration, persistence, or pace, and no repeated episodes of decompensation. Admin. Rec. at 68.  Dr. Winn further opined that plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods and in her ability to respond appropriately to changes in the work setting, but was not otherwise significantly limited.  Admin. Rec. at 71-72.

[22]Admin. Rec. at 1449.

[23]On November 25, 2009, Dr. Levy, a nonexamining source, opined that plaintiff had
(continued...)

capacity opinion.[24]  The ALJ gave little weight[25] to an assessment by Linda Glick,[26] Dr. Waldrup's opinion,[27] a 2002 FMLA opinion,[28] and Dr. Mackie's FMLA opinion.[29]  The ALJ

---

[23](...continued)
mild restrictions of daily living, mild difficulties with maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace; and no episodes of decompensation.  Admin. Rec. at 400.

[24]Dr. Levy opined that plaintiff as moderately limited in her ability to maintain attention and concentration for extended periods and to respond appropriately to changes in the work setting; and that plaintiff was "capable of complex and detailed instructions performed at a moderate pace, of interacting with the public, co-workers, and supervisors, and of routine and predictable tasks."  Docket No. 404-406.

[25]Admin. Rec. at 1448.

[26]On December 22, 1998, Glick, an occupational therapist, opined that a light duty assignment was appropriate for plaintiff and that plaintiff would require a height-adjustable standing stool, a kick stool, would need to be able to rotate jobs hourly, and could only do computer keyboarding for up to 5 minutes at a time.  Admin. Rec. at 271.

[27]On January 14, 2000, Dr. Waldrup completed a work restriction evaluation, in which he opined that plaintiff could sit for 2 hours but would need a 15-minute break every two hours, could walk for 8 hours, could not lift, bend, push, pull, or twist; could stand for 8 hours but would need a 15-minute break every 2 hours; could keyboard for 8 hours but would need a 15-minute break every 2 hours; could perform simple grasping; could perform repetitive wrist motion for 8 hours; could not operate or be around heavy moving equipment; and could not work at or above shoulder level.  Admin. Rec. at 278.

[28]On June 26, 2002, an unidentified doctor completed a FMLA statement, in which the doctor stated that plaintiff's fibromyalgia was "chronic", that plaintiff was "not incapacitated fully" but that she had "permanent impairment of [her] hand, neck, left shoulder and low back range of motion as well as pain."  Admin. Rec. at 281.

[29]In December 2004, Dr. Mackie completed a FMLA statement in which he indicated that plaintiff was unable to perform some of the essential functions of her job, but did not indicate which ones those were.  Admin. Rec. at 285.

gave little weight[30] to FNP Kutney's opinions.[31] The ALJ gave little[32] weight to Dr. Ross'

opinion.[33] The ALJ gave little weight to plaintiff's GAF scores.[34] The ALJ noted that an ALJ

must "ordinarily give great weight to a Veterans Administration determination of disability"

but gave plaintiff's 70% disability determination due to major depressive disorder and PTSD

---

[30]Admin. Rec. at 1449.

[31]On August 25, 2013, Kutney opined that plaintiff could sit for 2 hours, walk for 2 hours, could frequently lift/carry 10 pounds; could occasionally lift/carry up to 50 pounds; had marked limitations as to grasping, turning, or twisting objects, using fingers and hands for fine manipulations, and using her arms for overhead reaching; that her pain, fatigue, and other symptoms would frequently interfere with her attention and concentration; would need to take breaks every 2 hours; was capable of dealing with low stress; would be absent from work more than 3 times a month; and would need to avoid wetness, temperature extremes, and humidity. Admin. Rec. at 957-961. On August 10, 2015, Kutney opined that plaintiff could frequently lift/carry less than 10 pounds; occasionally lift/carry 10 pounds; could stand/walk for less than one hour; could sit for less than one hour; could never/rarely grasp, twist and turn objects; could never/rarely use hands/fingers for fine manipulation; and could occasionally use arms for reaching overhead. Admin. Rec. at 1544-1545. Kutney further opined that plaintiff's pain, fatigue and other symptoms would frequently interfere with her ability to concentrate and pay attention, that she would need unscheduled breaks throughout the day, and that she would miss more than three days of work per month. Admin. Rec. at 1545-1546.

[32]Admin. Rec. at 1450.

[33]On February 15, 2018, Dr. Ross, a chiropractor, opined that plaintiff could sit for less than one hour; could stand/walk for less than one hour; would need to elevate her legs ten times a day; could frequently lift less than 5 pounds; could occasionally lift up to ten pounds; could occasionally carry up to 10 pounds; could frequently grasp, turn, and twist objects; could never/rarely use hands/fingers for fine manipulations; could never/rarely use arms for reaching; would frequently have her attention and concentration interfered with because of her pain and symptoms; would need to take a break for 20-40 minutes every hour; and would miss more than three days of work per month. Admin. Rec. at 2592-2594.

[34]Admin. Rec. at 1450.

"less weight" because "the evidence in the record does not support a finding of severe mental impairments."[35]

At step four, the ALJ found that "[t]hrough the date last insured, the claimant was capable of performing past relevant work as a post office supervisor."[36]

Thus, the ALJ concluded that plaintiff "was not under a disability, as defined in the Social Security Act, at any time from August 1, 2009, the alleged onset date, through December 31, 2014, the date last insured. . . ."[37]

<u>Standard of Review</u>

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." <u>Sandgathe v. Chater</u>, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" <u>Id.</u> (quoting <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole,

---

[35]Admin. Rec. at 1450-1451.

[36]Admin. Rec. at 1451.

[37]Admin. Rec. at 1452.

weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred at step two in finding her mental impairments non-severe. "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005) (quoting Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)). "Step two . . . is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Id. (quoting Smolen, 80 F.3d at 1290). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Id. (quoting SSR 85–28).

In reaching the conclusion that plaintiff's mental impairments were non-severe, the ALJ relied on Dr. Valette's testimony and her opinion as to the "paragraph B" criteria.[38] Dr. Valette, a medical expert, testified that plaintiff's mental medically determinable impairments

---

[38]Admin. Rec. at 1440-1441.

were mood disorder due to another medical condition and PTSD,[39] but that these impairments were not severe.[40]  Dr. Valette opined that plaintiff had no limitations as to understanding, remembering, or applying information; mild limitations as to interacting with others; no limitations as to concentration, persistence, or maintaining pace; and no limitations as to adapting or managing oneself.[41]  Dr. Valette testified that Dr. Curtiss' opinions were not consistent with the medical evidence of record because plaintiff's "mental status is normal throughout."[42]  Dr. Valette testified that there should be recorded observations of the symptoms that plaintiff was complaining about, but that she did not see any in the record.[43]  Dr. Valette testified that she does not "put a lot of weight . . . on what the claimant says."[44]

In reaching the conclusion that plaintiff did not have any severe mental impairments, the ALJ also considered the opinions of Dr. Curtiss.  On December 5, 2013, Dr. Curtiss opined that plaintiff was mildly limited in her ability to carry out simple one or two-step instructions; was moderately limited in her ability to understand/remember simple one or two-step instructions, sustain ordinary routine without supervision, work in coordination with

---

[39]Admin. Rec. at 1481.

[40]Admin. Rec. at 1483.

[41]Admin. Rec. at 1481-1482.

[42]Admin. Rec. at 1483, 1488.

[43]Admin. Rec. at 1488-1489.

[44]Admin. Rec. at 1487.

or proximity to others without being distracted by them, interact appropriately with the general public, ask simple questions or request assistance, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, and set realistic goals or make plans independently; and was markedly limited in her ability to remember locations and work-like procedures, understand/remember/carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerance, make simple work related decisions, complete a normal workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, respond appropriately to changes in the work setting, be aware of normal hazards and take appropriate precautions, and travel to unfamiliar places or use public transportation.[45] Dr. Curtiss also opined that plaintiff would likely miss more than three days of week per month.[46] On April 24, 2015, Dr. Curtiss opined that plaintiff had no limitations as to interacting appropriately with the public; moderate limitations as to understand-ing/remembering/carrying out one-to-two step instructions, asking simple questions or requesting assistance, and adhering to basic standards of neatness; moderate-to-marked limitations as to carrying out detailed instructions, making simple work-related decisions,

_____

[45]Admin. Rec. at 1001-1003.

[46]Admin. Rec. at 1005.

accepting instructions and responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them, maintaining socially appropriate behavior, setting realistic goals, and making plans independently; and marked limitations as to remembering locations and work-like procedures, understanding/remembering detailed instructions, maintaining attention and concentration for extended periods, performing activities within a schedule and consistently being punctual, sustaining an ordinary routine without supervision, working in coordination with or near others without being distracted by them, completing a workday without interruptions from psychological symptoms, performing at a consistent pace without rest periods of unreasonable length or frequency, responding appropriately to workplace changes, being aware of hazards and taking appropriate precautions, and traveling to unfamiliar places or using public transportation.[47] Dr. Curtiss also opined that plaintiff would miss more than 3 days of work per month and that her symptoms and limitations applied as far back as July 1, 2009.[48]

The ALJ gave these opinions no weight because they were not supported by the medical evidence of record.[49] The ALJ cited to mental status exams in August 2009, December 2010, and March 2013, and noted that at these exams, plaintiff was alert and attentive, had normal and coherent thought process, no unusual thought content, and good

---

[47]Admin. Rec. at 1571. Dr. Curtiss reiterated these limitations in an April 27, 2015 letter. Admin. Rec. at 1828.

[48]Admin. Rec. at 1572.

[49]Admin. Rec. at 1442-1443.

insight and judgment.[50]  The ALJ also cited to a December 2013 mental status exam that showed that plaintiff had fair judgment, good to limited insight, impaired recent memory, no unusual thought content, and normal and coherent thought process.[51]

Plaintiff first argues that the ALJ erred because he should have given controlling weight to Dr. Curtiss' opinions since Dr. Curtiss was a treating physician.  "The medical opinion of a claimant's treating doctor is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'"  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).  Plaintiff argues that Dr. Curtiss' opinions should have been given controlling weight because they were well-supported by the medical evidence of record.  Plaintiff argues that the ALJ's finding that Dr. Curtiss' opinions were inconsistent with the medical evidence[52] was incorrect.

Plaintiff argues that the ALJ improperly focused on four mental status exams instead of looking to the longitudinal record.  Plaintiff points out that in the context of mental health

---

[50]Admin. Rec. at 1442.

[51]Admin. Rec. at 1442.

[52]Defendant contends that the ALJ also found that Dr. Curtiss' opinions were inconsistent with plaintiff's daily activities.  However, nowhere in the ALJ's step two discussion does the ALJ make such a finding.  The only discussion by the ALJ at step two of plaintiff's daily activities was in connection with the "paragraph B" criteria.  The ALJ rejected Dr. Curtiss' opinions because they were not consistent with the medical evidence of record.

impairments, "[c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). Plaintiff argues that the ALJ identified some normal mental status findings in the record, but ignored any abnormalities noted by Dr. Curtiss and other mental health providers.

Plaintiff also argues that, contrary to what the ALJ found, Dr. Curtiss' opinions were supported by the evidence of record. In her April 24, 2015, opinion, Dr. Curtiss noted that her opinion was based on the following "signs and symptoms": depressed mood, persistent or generalized anxiety, abnormal affect (superficially socially appropriate cheerfulness), difficulty in thinking or concentrating, poor recent memory, intrusive recollection of a traumatic experience, recurrent panic attacks, vigilance and scanning, anhedonia, decreased energy, motor tension, psychomotor abnormalities (retardation), social withdrawal or isolation, and insomnia.[53] Plaintiff contends that all of these signs and symptoms were documented in treatment records.

However, only some of these signs and symptoms were recorded in the treatment records as being observed by Dr. Curtiss or other mental health providers.[54] Many of them were self-reported by plaintiff. But, that does not mean that Dr. Curtiss' opinions were not

---

[53]Admin. Rec. at 1831.

[54]See, e.g., Admin. Rec. at 653 (impaired recent memory), 849 (depressed mood and affect), 2883 (anxiety).

well-supported. "Psychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnoses will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry." Buck v. Berryhill, 869 F.3d 1040, 1049 (9th Cir. 2017). "To allow an ALJ to discredit a mental health professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations' is to allow an end-run around [the] rules for evaluating medical opinions for the entire category of psychological disorders." Ferrando v. Comm'r of Social Sec. Admin., Case No. 10–15771, 2011 WL 3893801, at *2 n.2 (9th Cir. Sept. 6, 2011). Yet, that is exactly what the ALJ did here.

Moreover, the ALJ basically relied on Dr. Valette's opinion in order to reject Dr. Curtiss' opinions even though "the opinions of nonexamining doctors cannot by [themselves] constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.'" Revels, 874 F.3d at 655 (quoting Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995)). The ALJ could not reject Dr. Curtiss' opinions based simply on Dr. Valette's contrary opinion.

The foregoing establishes that Dr. Curtiss' opinions should have been given controlling weight. But even if the ALJ were not required to give those opinions controlling weight, the ALJ still failed to give Dr. Curtiss' opinions the appropriate weight. "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent

of the treatment relationship, supportability, and consistency with the record." Revels, 874 F.3d at 654. "Greater weight is also given to the 'opinion of a specialist about medical issues related to his or her area of specialty.'" Id. (quoting 20 C.F.R. § 404.1527(c)(5)). The ALJ focused on supportability and did not mention any of the other factors when deciding to give no weight to Dr. Curtiss' opinions.[55] The ALJ should have considered that Dr. Curtiss had treated plaintiff since at least 2010, during which time she saw Dr. Curtiss on a regular basis; that the nature of Dr. Curtiss' treatment was appropriate psychotropic medications and therapy; and that Dr. Curtiss was a psychiatrist. An ALJ errs "by failing to apply the appropriate factors in determining the extent to which the opinion should be credited." Trevizo v. Berryhill, 871 F.3d 664, 676 (9th Cir. 2017). Here, the ALJ did not consider many of the factors that he is instructed to consider when deciding what weight to give a treating physician's opinion.

The ALJ erred in rejecting Dr. Curtiss' opinions at step two. Dr. Curtiss' opinions should have been given controlling weight. In the alternative, they were at least entitled to great weight. Dr. Curtiss' opinions were sufficient to establish that plaintiff's mental health impairments would significantly limit her ability to do basic work activities. Thus, the ALJ erred in finding that plaintiff's mental health impairments were non-severe.

---

[55]Defendant points out that under the regulations that apply to claims filed after March 27, 2017, supportability and consistency are the "most important factors." 20 C.F.R. § 404.1520c(a). But plaintiff's claim was filed prior to March 27, 2017 and so the new regulations do not apply to her claim.

Defendant suggests that this error was harmless. "[A]n ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008)). Here, the ALJ's step two error was not harmless because the ALJ undoubtedly would have had to include some additional functional limitations in plaintiff's RFC had the ALJ found plaintiff's mental impairments severe.

Plaintiff next argues that the ALJ failed to properly consider her VA disability determination. On February 8, 2013, plaintiff was given a 70% disability rating due to major depressive disorder and PTSD.[56] The ALJ noted that an ALJ must "ordinarily give great weight to a Veterans Administration determination of disability" but gave plaintiff's 70% determination "less weight" in this case because "the evidence in the record does not support a finding of severe mental impairments."[57] The ALJ relied on Dr. Valette's testimony as the basis for giving plaintiff's VA disability rating "less weight."[58]

An "ALJ [is] justified in rejecting the VA's disability rating on the basis that []he had evidence the VA did not, which undermined the evidence the VA did have." Valentine v. Comm'r Social Sec. Admin., 574 F.3d 685, 695 (9th Cir. 2009). Defendant argues that the ALJ reasonably relied on Dr. Valette's opinion instead of the VA disability determination.

---

[56]Admin. Rec. at 1303.

[57]Admin. Rec. at 1450-1451.

[58]Admin. Rec. at 1451.

While Dr. Valette's opinion may have been evidence that the VA did not have, Dr. Valette's opinion is of little value. Dr. Valette basically relied on the fact that plaintiff had generally normal mental status exams, but as Dr. Curtiss explained, plaintiff had the ability to appear socially appropriate for brief periods of time.[59] In addition, Dr. Valette's contention that she does not credit a claimant's subjective statements[60] is contrary to how the Ninth Circuit views psychiatric evaluations. See Buck, 869 F.3d at 1049. The ALJ erred in giving plaintiff's VA disability rating less weight.

Plaintiff next argues that the ALJ erred as to credibility. "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison, 759 F.3d at 1014. "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen, 80 F.3d at 1282). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1282). "If the claimant satisfies the first

---

[59]Admin. Rec. at 1831; 2884.

[60]Admin. Rec. at 1487.

step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted).

The ALJ found plaintiff's pain and symptom statements less than credible for three reasons. First, the ALJ found that there was evidence of secondary gain because plaintiff "ended work for reasons other than disability[,]" that she retired from the post office "voluntarily due to overwhelming frustrations. . . ."[61] Second, the ALJ found that plaintiff was not compliant with recommended treatment and mentioned her failure to comply with her diabetic medications and care, her failure to take medication for fibromyalgia, her failure

---

[61]Admin. Rec. at 1447.

to wear her knee brace, and her failure to take her glaucoma medication.[62]  Third, the ALJ found that plaintiff's pain and symptom statements were not consistent with the medical evidence and cited to three treatment notes involving plaintiff's physical impairments.[63]

Plaintiff argues that the ALJ erred as to credibility because he did not address her subjective statements as to her mental impairments.  Rather, plaintiff contends that the ALJ's credibility findings focused on issues related to plaintiff's physical impairments.

The ALJ appears to have failed to consider plaintiff's symptom statements as they related to her mental impairments when assessing her credibility.  That indicates that the ALJ failed to properly assess plaintiff's RFC.  "The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those that are not severe." Carmickle, 533 F.3d at 1164.  "Even though a non-severe 'impairment[] standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.'"  Id. (quoting SSR 96–8p (1996)).  Even if the ALJ had properly found that plaintiff's mental impairments were non-severe, the ALJ was required to consider whether plaintiff's medically determinable mental impairments resulted in any limitations. This the ALJ did not do, which was error.

---

[62]Admin. Rec. at 1447.

[63]Admin. Rec. at 1447.

Because the ALJ erred, the court must determine whether to remand this matter for further proceedings or for an award of benefits. The court follows a three-step analysis to determine whether a remand for an award of benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter v. Colvin, 806 F.3d 487, 495 (9th Cir. 2015) (quoting Garrison, 759 F.3d at 1020). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021).

A remand for benefits is appropriate here. The ALJ did not provide legally sufficient reasons for rejecting Dr. Curtiss' opinions. Further development of the record would not be useful. In addition to other functional limitations, Dr. Curtiss opined that plaintiff would

miss more than three days of work per month.[64] If that opinion were given either controlling weight or great weight, there would be no doubt that plaintiff was disabled as of her date last insured. This is one of those "unusual case[s] in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited testimony[.]" <u>Benecke v. Barnhart</u>, 379 F.3d 587, 595 (9th Cir. 2004). In such cases, a "remand for an immediate award of benefits is appropriate."

Conclusion

The decision of the Commissioner is reversed and this matter is remanded for an award of benefits.

DATED at Anchorage, Alaska, this 14th day of February, 2020.

/s/ H. Russel Holland
United States District Judge

---

[64]Admin. Rec. at 1005.